## ROBERT WILSON v. THE STATE.

CRIMINAL LAW. *Arrest by private citizen.* A private citizen has the right to arrest when a felony has been committed and he has reasonable cause to believe the person arrested committed it. Reasonable grounds will justify the arrest, whether the facts, when developed, would be sufficient or not. The finding of stolen goods in possession of the party arrested was proof sufficient that a felony had been committed, especially when connected with the confession of larceny by the prisoner, and finding some of the property where defendant said he had secreted it.

### FROM SHELBY.

Appeal in error from the Criminal Court of Shelby county. L. B. HORRIGAN, J.

T. E. RICHARDSON and J. M. HARRIS for Wilson.

ATTORNEY-GENERAL LEA for the State.

TURNEY, J., delivered the opinion of the court.

Plaintiff in error was indicted and convicted of murder in the first degree for the killing of Frank B. Russell. The facts are, substantially, as follows: On the night of the killing Russell was heard to cry, Halt! halt! halt! and immediately after the last cry the report of a pistol was heard. On going to the place witness found the prisoner lying on the sidewalk, and Russell standing over him with a pistol in his hand, the prisoner praying for mercy and begging Russell not to shoot him any more. Prisoner was shot in the rear portion of the leg, just below the hip joint. He had in his hand a bucket of lard. Russell said, "D—n you! I've got you, have I? Get up from there, I want to see if I know you."

The prisoner was assisted in getting up, and led into a drug-store. The bucket of lard was also taken in. The prisoner was seated on a stool. Russell said: "That is my bucket of lard; I bought it a day or two ago." Defendant made no reply. Russell, still with pistol in hand, said to prisoner: "Hold your head up, sir; I want to see you; I want to know who you are."

"The prisoner seemed to be in agony, was groaning and going on at a terrible rate."

Russell asked a clerk in the drug-store to telephone for the police. While the clerk was doing so, the prisoner sprang toward the door. Russell

and another "grabbed" him. They struggled toward the door. The prisoner caught the hand of Russell that held the pistol with his (prisoner's) right hand, and as they passed out of the door bit the wrist of the witness, who was assisting Russell, and broke his hold, and witness retired from the scuffle. Russell and the prisoner continued the struggle, both holding to Russell's pistol. The prisoner placed his right hand behind him, drew his pistol, and, stooping, pointed it toward Russell and fired three shots in quick succession. Russell died of the wounds. The prisoner was arrested that night. He had both his and Russell's pistols. He sent for the chief of police, and told him that he and a man named Williams went to Russell's store the night before the shooting; that Williams broke and entered Russell's store; that he (defendant) remained on the outside and watched; that Williams brought out some goods; that they could not carry all away, and left a bucket of lard in a vacant lot, and he went after it the night of the killing; that some of the goods were at Stonewall's, and some were under an old house. The goods were found at the places named.

By Code, secs. 5042 and 5043, it is enacted that a private person may arrest another, 1. For a public offense committed in his presence; 2. When the person arrested has committed a felony, although not in his presence; 3. When a felony has been committed and he has reasonable cause to believe that the person arrested committed it. He shall at the time of the

Wilson *v*. The State.

arrest inform the person arrested of the cause thereof, except when he is in the actual commission of the offense, or when arrested on pursuit."

The arrest in the present case was on pursuit, and the facts already cited show that the person was fully advised of the cause for which he was arrested, and by his silence confessed to the larceny of the bucket of lard. There is ample proof in the record to convict him, at least, of the larceny.

The statute does not make it necessary to show that a greater offense had been committed. It is sufficient if a felony has been committed, and the party arresting had reasonable grounds to believe the arrested party had committed it. Here he was found and seized with stolen goods in his possession, and with which he was trying to escape.

The court charged the jury: "If you find that a felony had been committed, that is to say, if you find from the evidence that the business house of the deceased had been broken and entered for the purpose of stealing the personal property therein, on the night before the difficulty between deceased and defendant, and the deceased had reasonable grounds to believe that the defendant was the party, or one of the parties, who committed said crime, then the deceased had a lawful right to arrest the defendant, and after the defendant was notified by the deceased of the cause of such arrest, it was the duty of the defendant to submit to such arrest until he might be within a reasonable time turned over to the officers of the law. And if the defendant attempted to

break said arrest, the deceased would have a right to use all the force absolutely necessary to detain the defendant in such arrest, and if the defendant, with the intent to escape from and avoid such arrest, willfully, deliberately, premeditatedly, and with express malice, shot and killed the deceased, then the defendant would be guilty of murder in the first degree."

There is no error in this charge of which the prisoner may complain. It is too favorable to the prisoner. It was even against the State to confine the charge to the felony defined in the charge.

Russell had reasonable grounds to believe the prisoner guilty of stealing the lard. And having such reasonable grounds of belief, it was the duty of the prisoner to submit to the arrest as required by the statute. Reasonable grounds justified the arrest, whether the facts when developed would be sufficient to convict or not. We must be controlled by the statute. Common law rules in conflict with it are modified by it. The facts, however, demonstrated the prisoner's guilt. If the charge had stopped short of the house-breaking with intent to steal, it would have been sufficient, and there is nothing in that part of it calculated to mislead the jury to the prejudice of the prisoner. The conduct of the prisoner after he was arrested, his feigned suffering to throw parties having him in custody off their guard, show conclusively that he fully understood the situation. He had, we have no doubt, armed himself to kill, if it became necessary to complete the felony he had

undertaken, or to protect himself from arrest. His plans were well formed.

We see no reason to disturb the verdict, and the judgment is affirmed.

FREEMAN, J., dissents.

The judgment of the court is, that the prisoner be remanded to the jail of this county; that he be ·delivered by the sheriff of this county to the sheriff of Shelby county, who will, on Friday, the 20th day of July, 1883, between the hours of 10 o'clock A. M., and 4 o'clock P. M., within the jail of said last named county, or within the enclosed yard of said jail, or within an enclosure erected for the purpose adjacent to the prison, as provided by law, on a gallows, privately hang the prisoner by the neck until he is dead.

The enclosure to be higher than the gallows, or so constructed as to exclude the view of persons outside thereof: Acts 1883, p. 139.